*NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

B.C. & J.C. o/b/o S.C.,

Plaintiffs,

v.

WALL TOWNSHIP BOARD OF
EDUCATION,

Defendants.

Civil Action No. 13-7085 (FLW)

OPINION

**WOLFSON, United States District Judge:**

Before the Court is Plaintiffs B.C. & J.C. on behalf of S.C.'s ("Plaintiffs") Order to Show Cause requesting that the Court reverse the decision of Administrative Law Judge Edward Delanoy ("ALJ") denying Plaintiffs' application for emergent relief and order Defendant Wall Township Board of Education ("Wall" or "Defendant") to pay for and/or reimburse Plaintiffs for the cost of S.C.'s placement at RedCliff Ascent Psychiatric Program ("Ascent"), located in Utah. Plaintiffs assert that such emergent injunctive relief is appropriate because Defendant has failed to fulfill its responsibilities toward S.C. under the Individuals with Disabilities in Education Act ("IDEA"). *See* 20 U.S.C. § 1415 *et seq*. For the reasons stated on the record at the hearing on December 11, 2013, and for the following reasons, the Court denies Plaintiffs' application and dismissed the Complaint.

**BACKGROUND**

S.C. is 17 year old child residing in Wall Township, New Jersey, who is subject to the provisions of the IDEA, having been classified as "multiply disabled" due to ADHD, Sensory

1

Integration Disorder, Executive Processing Disorder, Depressive Disorder, PTSD, and a learning disability. Compl., ¶¶ 1, 3. As part of his IEP, and due to problems with S.C.'s attendance at Wall Township schools, Defendant provided S.C. with placement at Point Pleasant Borough High School ("Point Pleasant"). *See id.* at ¶ 10. S.C. was unable to attend his entire placement as set forth in his Individualized Education Plan ("IEP") for the 2012-2013 school year, and continuing to January 2014, at Point Pleasant, and was instead placed on home instruction; Point Pleasant did not allow S.C. to return for the 2013-2014 school year. *Id.* at ¶¶ 4, 6. Although Point Pleasant offered S.C. an online education program for the remaded of the IEP, Plaintiffs, on the opinion of one of S.C.'s treating psychiatrists, placed S.C. at the Menniger Clinic in September 2013, and thereafter at Ascent since October 2013. *Id.* at ¶¶ 5, 11. S.C. does not have an new IEP in place for the 2013-2014 school year, and Plaintiffs are currently paying for S.C.'s placement at Ascent. *Id.* at ¶¶ 7, 14, 16; *see also* Pet'rs' App. for Emergent Relief, Dkt. No. 3-1, 7-9.

Plaintiffs filed an application for emergent relief before the ALJ, pursuant to N.J.A.C. 1:6A-12.1, seeking interim relief ordering that S.C. be entitled to be placed at Ascent and for Defendant to immediately begin funding his placement there. *See* Compl., Ex. B (Decision of ALJ) at 1-2. Following a hearing, in a written decision issued on November 14, 2013, the ALJ denied Plaintiffs' application. Plaintiffs then filed a Complaint in this Court on November 21, 2013 "seeking interlocutory appeal" from the ALJ's decision. On November 25, 2013, Plaintiffs filed the instant application for an order to show cause pursuant to Fed. R. Civ. P. 65 and L. Civ. R. 65.1, seeking emergent relief in the form of a request to (1) reverse the ALJ's denial of their application below and (2) order Defendant immediately to pay and/or reimburse Plaintiffs for S.C.'s placement at Ascent. Defendant was served the same day, on November 25, and filed its

opposition, to which Plaintiffs have replied. At counsel for Plaintiffs' request, and counsel for Defendant's consent, the Court held a telephonic hearing on December 11, 2013, in which the Court's reporter was present and a transcription was made. At the close of the hearing, the Court denied Plaintiffs' application and dismissed Plaintiffs' Complaint. This Opinion further explains the basis for the Court's oral ruling.

**PLAINTIFFS' APPLICATION**

In the application for emergent relief here, Plaintiffs effectively seek the same relief that they sought before the ALJ, to wit, a finding that Ascent is a proper placement for S.C. and an order that Defendant pay for S.C.'s placement there, both of which the ALJ denied. Plaintiffs argue that S.C. will face irreparable harm if he is not allowed to continue his program at Ascent, as evidenced by the opinion of S.C.'s treating psychologist. In that connection, Plaintiffs contend that S.C.'s current program and placement at Ascent will be terminated if Defendant does not agree to immediately pay for the program, or to reimburse Plaintiffs for the same. Defendant opposes Plaintiffs' application, arguing that there is no basis to allow Plaintiffs to take an interlocutory appeal from the ALJ's decision to deny their application for emergent relief, and further, that Plaintiffs have failed to carry their burden of demonstrating a likelihood of success on the merits in this matter. I address each of these issues separately.

    **A.    Interlocutory Jurisdiction**

Plaintiffs contend that this Court has jurisdiction over their appeal under 20 U.S.C. § 1415(i)(2)(A), which provides that an aggrieved party in an IDEA matter may appeal the decision of an ALJ to federal court.[1] Plaintiffs further argue that they are not bound by the

---

[1]     20 U.S.C.A. § 1415(i)(2)(A) provides:

IDEA's normal administrative exhaustion requirements, *see* 20 U.S.C. § 1415(f), because exhaustion would be futile or inadequate for the remedy they seek. *See Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994). I note that it is undisputed that the ALJ's decision is interlocutory, not final. Plaintiffs accordingly must demonstrate the applicability of an exception to the IDEA's statutory exhaustion requirement in order for this Court to have jurisdiction over this matter. *See id.* at 778 n.1 ("Section 1415(e) does not grant a court authority to review an ALJ's decision before the administrative process has been completed.")

Here, I do not find that the futility exception applies to Plaintiffs' application for emergent relief. It is undisputed The Third Circuit has explained that in the IDEA context, plaintiffs may "be excused from the pursuit of administrative remedies where they allege *systemic* legal deficiencies and, correspondingly, *request system-wide relief* that cannot be provided (or even addressed) through the administrative process." *Beth V. by Yvonne V. v. Carroll*, 87 F.3d 80, 89 (3d Cir. 1996) (emphasis added). In other words, the futility exception only applies where a plaintiff is unable to obtain his or her requested relief due to some administrative defect; the futility exception is not meant to apply to a plaintiff who merely disagrees with the ALJ's decision. *See, e.g.*, *Grieco v. N.J. Dep't of Educ.*, Civ. No. 06-cv-4077, 2007 WL 1876498, at *6 (D.N.J. June 27, 2007) (a claim is not "'systemic' if it involves only a substantive claim having to do with limited components of a program, and if the administrative

---

Any party aggrieved by the findings and decision made under subsection (f) or (k) who does not have the right to an appeal under subsection (g), and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.

process is capable of correcting the problem"). Plaintiffs have not alleged any systemic deficiency that would support excusing Plaintiffs from exhausting their administrative remedies. Rather, Plaintiffs' futility argument is grounded on allegations that Defendant has failed to fulfill its obligations under the IDEA and to provide S.C. with an IEP for the 2013-2014 school year. *See* Pet'rs' Reply, 22. This argument goes only the merits of whether Defendant violated the IDEA—not whether seeking administrative relief would be futile or inadequate—and accordingly is insufficient to allow Plaintiffs to bypass the statutory administrative exhaustion requirement.

Plaintiffs' reliance on the unpublished district court opinion in *M.K. o/b/o R.K. v. Roselle Bd. of Ed.*, Civ. No. 06-4499 (JAG), 2006 WL3193915 (D.N.J. Oct. 31, 2006), is similarly misplaced. The *M.K.* court permitted an interlocutory appeal under the IDEA on a request for emergent relief based on the IDEA's "stay-put" provision. *See* 20 U.S.C. § 1415(j). The stay-put provision of the IDEA provides that "during the pendency of any proceedings conducted pursuant to [20 U.S.C. § 1415], unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." *Id.* "Stay-put orders are designed to maintain the status quo during the course of proceedings." *J.O. ex rel. C.O. v. Orange Tp. Bd. of Educ.*, 287 F.3d 267, 272 (3d Cir. 2002). The stay-put provision thus applies to appeals from the ALJ to the district court. *See Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 868 n.16 (3d Cir. 1996). In sum, "the stay-put provision was intended to serve as a type of 'automatic preliminary injunction' preventing *local educational authorities* from unilaterally changing a student's existing educational program." *Michael C. ex rel. Stephen C. v. Radnor Twp. Sch. Dist.*, 202 F.3d 642, 650 (3d Cir. 2000) (emphasis added).

5

The stay-put provision is inapplicable in circumstances where, as here, the child is not currently in any placement contemplated by the IEP. "[W]here a parent unilaterally removes a child from an existing placement determined in accordance with state procedures, and puts the child in a different placement that was not assigned through proper state procedures, the protections of the stay-put provision are inoperative until the state or local educational authorities and the parents agree on a new placement." *Michael C.*, 202 F.3d at 651 (citing *Susquenita Sch. Dist. v. Raelee S.*, 96 F.3d 78, 83 (3d Cir. 1996)). In other words, the stay-put provision does not apply where there is no "then-current educational placement." *Id.* Here, Plaintiffs unilaterally placed S.C. in the Ascent program; it is not a current educational placement approved by Defendant or envisioned by any IEP. Indeed, although Plaintiffs contend that they were required to act following Point Pleasant's indication that S.C. could not return to school there, the preliminary record does not show that Plaintiffs' decision to place S.C. first at the Menninger Clinic in September 2013, and now at Ascent, were the only options available to Plaintiffs at that time. Accordingly, Plaintiffs' interlocutory appeal cannot be based on the stay-put provision.

Lastly, neither of the New Jersey Office of Administrative Law ("OAL") decisions cited by Plaintiffs supports allowing an interlocutory appeal from the ALJ. In the first decision, *S.C. o/b/o M.C. v. North Brunswick Township Bd. of Educ.*, No. EDS 5449-09 (OAL Dec. June 9, 2009), the OAL addressed whether the North Brunswick Township Board of Education could be required to pay for the child's placement in a summer-time only, therapeutic program that was in addition to the child's agreed upon placement at an approved public school. Nothing in the decision suggests that this Court can hear an interlocutory appeal from an ALJ on the issue of payment for a non-approved placement by Plaintiffs. Furthermore, Plaintiffs here are not asking Defendant to pay for a supplemental therapeutic program, but one that takes the place of S.C.'s

6

school placement. In the second decision, *S.A. and D.A. o/b/o T.A. v. Caldwell-West Caldwell Bd. of Educ.*, No. EDS 7645-06 (OAL Dec. Nov. 2, 2006), the OAL was faced with the application of the stay-put provision of the IDEA after the local education authority changed the child's placement with respect to the extended school-year portion of the IEP, *i.e.*, a therapeutic summer program. Again, nothing in *S.A.* states or suggests that Plaintiffs can bring an interlocutory appeal from the ALJ without a showing that Plaintiffs fit within one of the exceptions to the administrative exhaustion requirement.

For these reasons, I conclude that Plaintiffs have not demonstrated that this Court has jurisdiction to entertain the instant application for emergent relief; in addition, Plaintiffs' Complaint must be dismissed because the entirety of the Complaint is based on the same grounds as their application for emergent relief. *See Komninos*, 13 F.3d at 778 & n.1.

### B. Preliminary Injunction Standards

Even assuming that this Court has jurisdiction over Plaintiffs' claims, the application for emergent relief must nevertheless be dismissed because Plaintiffs have not met their burden of showing that preliminary injunctive relief is appropriate at this juncture.

It is well-settled in this circuit that a party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that he will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the non-moving party; and (4) that the public interest favors such relief. *Conestoga Wood Specialties Corp. v. Sec'y of the U.S. Health and Serv.*, No. 13-1114, 2013 U.S. App. LEXIS 15238, at *11-12 (3d Cir. Jul. 26, 2013); *Kos Pharms. Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). The Third Circuit has instructed, and recently reaffirmed, that a plaintiff seeking an injunction must meet *all* four criteria, as "[a] plaintiff's failure to establish any element in its favor renders a

preliminary injunction inappropriate." *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999); *see Conestoga*, 2013 U.S. App. LEXIS 15238, at *11.

In order to show a likelihood of success on their claim that the ALJ erred in denying Plaintiffs' request for emergent relief below, Plaintiffs must establish that they were entitled to such emergent relief under New Jersey law. In that connection, N.J. Admin. Code 1:6A-12.1, provides that:

> [An] application for emergent relief may be granted only if it is determined:
> 
> i. The petitioner will suffer irreparable harm if the requested relief is not granted;
> ii. The legal right underlying the petitioner's claim is settled;
> iii. The petitioner has a likelihood of prevailing on the merits of the underlying claim; and
> iv. When the equities and interests of the parties are balanced, the petitioner will suffer greater harm than the respondent will suffer if the requested relief is not granted.

With respect to the issue of irreparable harm, the ALJ found no threat of irreparable harm, as the relief sought by Plaintiffs was solely monetary in nature. Specifically, Plaintiffs demanded below the same they do here—that Defendants pay for the continuation of S.C. at Ascent. *See* Compl., Ex. B (Decision of ALJ) at 6. Although Plaintiffs also argue here that S.C. will face irreparable harm if he is not allowed to continue at Ascent, neither Plaintiffs' Complaint nor their application for emergent relief contains any allegation that Plaintiffs are unable to pay for S.C.'s placement at Ascent. Moreover, Plaintiffs' arguments that S.C. will be imminently dropped from Ascent if Defendant does not begin to make payments to the program is belied by their constantly changing position—Defendant contends that initially Plaintiffs argued before the ALJ that S.C. would be unable to continue at Ascent if payment was not made by November 18, 2013; however, in their instant Application, Plaintiffs state that Ascent has agreed to extend monies due and owning through November 30, 2013; and Plaintiffs reply, filed on December 9,

8

2013, makes no mention of whether S.C. has been removed from Ascent due to failure to pay. The constantly changing date of when S.C. will allegedly be harmed militates against a finding that Plaintiffs have demonstrated they will suffer irreparable harm sufficient to justify the imposition of preliminary injunctive relief.

The ALJ also grounded the denial of Plaintiffs' request for emergent relief on their failure to demonstrate that Ascent was a proper educational placement that Defendant would be obligated to pay for under the IDEA. *See* Compl., Ex. B (Decision of ALJ) at 5. Specifically, the ALJ explained that "since the only proofs before me are those submitted by Plaintiffs in their application, without more, I am unable to make the necessary factual findings" with respect to appropriateness of Ascent as a placement. *Id.* Admittedly, Plaintiffs appear to have submitted additional documentation and exhibits in connection with their application in this Court to show that Ascent is a proper educational placement for S.C. under the IDEA. Nevertheless, Defendant still maintains that Ascent is not a school under any statutory or logical definition of the word "school," and thus Defendant cannot remit payment. Indeed, the determination of whether a parent's unilateral placement of a child in a school other than the one proposed by the local education authority or set forth in the IEP requires a complex analysis—normally by the ALJ— to determine whether the placement is appropriate and, if it is, what amount of tuition or expenses the local education authority must cover. *See, e.g.*, *C.H. v. Cape Henlopen School Dist.*, 606 F.3d 59, 66-67 (3d Cir. 2010). This Court, like the ALJ, cannot discern from Plaintiffs' submissions whether Ascent is (1) an appropriate educational placement or (2) a therapeutic program that would not be covered by the IDEA. For that reason, I am unable to find that Plaintiffs can show a likelihood of success on the merits that they are entitled to have Defendant pay for S.C.'s placement at Ascent.

My decision in *L.M. ex rel. H.M. v. Evesham Tp. Bd. of Educ.*, 256 F. Supp. 2d 290 (D.N.J. 2006), is not to the contrary. The issue presented there was whether the parents could be reimbursed for their unilateral placement of their child in a sectarian school, where that placement was otherwise appropriate under the IDEA. *See id.* at 291 ("Where the local board has failed to provide a child with a free appropriate public education, *and the parents' unilateral placement was appropriate under the Individuals with Disabilities in Education Act*, the sectarian nature of a private school does not bar reimbursement under New Jersey or federal law." (Emphasis added.)). Nothing in *L.M.* undermines the principle that Plaintiffs must demonstrate that their unilateral placement of S.C. in Ascent is appropriate under the IDEA. Indeed, as I explained in *L.M.*: "Parents who withdraw their child from public school and unilaterally place him or her in private school while challenging the IEP may be entitled to reimbursement of their tuition costs *if the ALJ finds* . . . that *the parents' unilateral placement was appropriate, under the IDEA*." *Id.* at 292 (emphasis added) (citing *Florence Cty. Schl. Dist. v. Carter*, 510 U.S. 7, 12 (1993)).

In light of the foregoing, I find that Plaintiffs have failed to carry their high burden on this motion for a preliminary injunction to show a likelihood of success on the merits of their underlying claim. *See Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d at 708 ("Preliminary injunctive relief is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'"). For this additional reason, Plaintiffs' application for emergent relief is denied.

**CONCLUSION**

For the reasons stated on the record at the telephonic hearing on December 11, 2013, and for the additional reasons set forth in this Opinion, Plaintiffs' application for emergent relief is denied, and Plaintiffs' Complaint is dismissed. An appropriate Order shall follow.

Date: December 11, 2013					/s/	Freda L. Wolfson
							Freda L. Wolfson, U.S.D.J.